UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

R.B., A MINOR BY AND THROUGH
HIS NEXT FRIEND D.L.B.                                                              PLAINTIFFS

V.                                                            CIVIL ACTION NO. 3:07CV329 DPJ-JCS

HINDS COUNTY SCHOOL DISTRICT                                                 DEFENDANT

### ORDER

This § 1983 action is before the Court on the motion of Defendant Hinds County School District (HCSD) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff has responded in opposition. The Court, having considered the memoranda and submissions of the parties, finds that Defendant's motion should be granted.

I.      Facts and Procedural History

Plaintiff R.B., a minor, through his father and next friend D.L.B., filed this action against the HCSD in response to disciplinary measures taken by Defendant. The following facts are gleaned largely from Plaintiffs' Complaint and their response to the motion for summary judgment.

On or about February 5, 2004, R.B. was called to the principal's office as the result of a complaint by a fellow student that R.B. was selling marijuana. R.B. denied having drugs and allowed the principal to search his book bag. Upon doing so, the principal found what he believed to be a pocket knife, which Plaintiffs characterize as a nail file. As a result of this finding, R.B. was suspended from the middle school and transferred to the Main Street Alternative School. Plaintiffs appealed the decision to the Hinds County School District Appeals Commission ("Appeals Commission"), which upheld the principal's decision. The transfer

decision was likewise upheld by the Hinds County School District Board of Trustees ("School Board") and the district superintendent.

A few months later, on May 20, 2004, R.B. was expelled from the alternative school for one calendar year for possession of marijuana on school grounds. According to Plaintiffs, the marijuana belonged to another student who tossed it to R.B. shortly before a teacher approached; R.B. then tossed it aside. Again, the family appealed the decision to the Appeals Committee, which upheld the expulsion, as did the School Board.

Aggrieved, Plaintiffs then sought judicial review of both disciplinary actions through an appeal to the Hinds County Chancery Court. The chancery court reversed the decisions of the School Board and ordered the actions expunged from R.B.'s record. HCSD in turn appealed to the Mississippi Court of Appeals, which affirmed the chancery court, and then to the Mississippi Supreme Court, which reversed the lower courts, finding in favor of HCSD.

Plaintiffs filed this federal action while the state court case was still pending, alleging that HCSD's conduct deprived R.B. of his constitutional rights. The precise deprivations are not readily apparent from Plaintiffs' Complaint, but the parties appear to focus on the same alleged violations. First, the parties address potential Fourth Amendment search and seizure violations related to both the nail file/knife and marijuana incidents. Second, Plaintiffs allege the following conduct in violation of R.B.'s due process rights: (1) the Appeals Committee and School Board affirmed transfer to the alternative school without examining the nail file/knife; (2) R.B. was not allowed to confront witnesses before the Appeals Committee regarding his marijuana-related expulsion; and (3) the School Board failed to provide notice of the June 10, 2004 School Board meeting regarding the marijuana charge. Defendant filed this motion for summary judgment,

2

and Plaintiffs have responded in opposition. The motion is now ripe for consideration by the Court.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of

material fact is not a sufficient response to a motion for summary judgment. *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

III. Analysis

Plaintiffs primarily pursue claims under 42 U.S.C. § 1983. To obtain relief under § 1983, a plaintiff must prove that he was deprived of a right under the Constitution or laws of the United States and that the person depriving him of that right acted under color of state law. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir. 1993), *cert. denied*, 510 U.S. 820 (1993). Liability under § 1983 may not be imposed upon school districts under theories of vicarious liability or respondeat superior. *Doe v. Beaumont Indep. Sch. Dist.*, 8 F. Supp. 2d 596, 607 (E.D. Tex. 1998) (citing *Collins v. City of Harker Heights*, 503 U.S 115, 123 (1992)). Thus, in order to recover in this § 1983 action against HCSD, Plaintiffs must satisfy the requirements for municipal liability.

Municipal liability under § 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To meet the second requirement, an official policy, in the

4

absence of a promulgated policy statement, ordinance or regulation, a plaintiff can attempt to establish policy by a custom. A custom is "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

A. Fourth Amendment Issues

Although there appear to be no allegations in the Complaint related to Fourth Amendment violations, Defendants have addressed various search and seizure issues that Plaintiffs apparently identified during discovery. For their part, Plaintiffs briefly mention such claims in their response, highlighting the initial search and subsequent arrest following the February 2004 nail file/knife incident and the mode of questioning related to the marijuana issue.

As Defendant observed in both of its memoranda, Plaintiffs have failed to direct the Court to any record evidence of (1) a policymaker, (2) an official policy, or (3) a violation of constitutional rights whose "moving force" is the policy or custom with respect to either search and seizure claim. *Monell*, 436 U.S. at 694. Plaintiffs similarly offer no evidence of a relevant "custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. Plaintiffs have not therefore addressed "element[s] essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Conclusory allegations and unsubstantiated assertions are not sufficient. *TIG Ins. Co.*, 276 F.3d at 759. The Fourth Amendment based § 1983 claims are due to be dismissed.[1]

---

[1] Defendant raised additional arguments related to the constitutionality of the search and seizure that provide alternative grounds for dismissal. Specifically, the Court agrees that reasonable suspicion existed and that the searches were reasonable in scope. *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 622 (5th Cir. 2004). The Court further finds that probable cause

B. Due Process Deprivation

Plaintiffs also premise their § 1983 claim on an alleged violation of R.B.'s right to substantive and procedural due process related to the HCSD's handling of the two incidents. Pls.' Resp. at 9. "To prevail on a procedural or substantive due process claim, the plaintiffs must show that they were deprived of a constitutionally protected property or liberty interest." *Esparza v. Bd. of Trs.*, 182 F.3d 915, 1999 WL 423109, at *3 (5th Cir. 1999) (unpublished table decision) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)); *see also Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) ("In order to allege a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a legitimate claim of entitlement to that interest." (internal quotation omitted)). Stated differently, there can be no substantive or procedural due process violation if no property or liberty interest exists. Thus, the threshold question for the Court is whether Plaintiffs have alleged the deprivation of a constitutionally protected property interest.

1. Transfer Following February 2004 Nail File/Knife Incident

Following the nail file/knife incident in February 2004, R.B. was transferred to the alternative school. A primary thrust of Plaintiff's case is that the hearing procedure denied R.B. his right to due process. Defendant argues that the transfer of a student to an alternative school does not implicate a constitutionally protected interest. This assertion is well-supported by case law.

In *Nevares v. San Marcos Consolidated Independent School District*, 111 F.3d 25 (5th Cir. 1997), the Fifth Circuit Court of Appeals held that transfer to an alternative school for

---

existed for an arrest. *Sorenson v. Ferrie*, 134 F.3d 325, 327-28 (5th Cir. 1998).

disciplinary reasons does not amount to a denial of access to public education. The Court noted that the student would only be transferred from "one school program to another program with stricter discipline" and, accordingly, no protected property interest was implicated. *Id.* at 26; *see also Langley v. Monroe County Sch. Dist.*, 264 F. App'x 366, 368 (5th Cir. 2008) ("[W]e have previously held that a student's transfer to an alternative school for disciplinary reasons implicates no constitutionally-protected property interest." (citing *Nevares*, *supra*)) (vacating judgment in favor of school district and remanding with instructions to dismiss the case); *Esparza*, 1999 WL 423109, at *4; *Rivera v. Jones*, Civil Action No. L-06-019, 2008 WL 4279628, at *2 (S.D. Tex. Sept. 11, 2008). Accordingly, summary judgment is appropriate as to Plaintiffs' claims of due process deprivations relating to the decision to transfer him to an alternative school.[2]

### 2. Expulsion Related to Alleged Marijuana Possession

By contrast, an entitlement to public education is a recognized property interest protected by the due process clause of the Fourteenth Amendment. *See Goss v. Lopez*, 419 U.S. 565, 575 (1975); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 262 (5th Cir. 1985). R.B. was denied a legitimate property interest when he was expelled for one year. *See Goss*, 419 U.S. at 575.

HCSD argues, however, that Plaintiffs are collaterally estopped from relitigating the alleged constitutional deprivations stemming from the expulsion, and the Court agrees. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive

---

[2] As with the Fourth Amendment issues, Plaintiffs made an insufficient effort to establish a custom or policy with respect to the transfer. Thus, even if a property interest existed, the claim would still fail under Rule 56.

effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged." *Raju v. Rhodes*, 7 F.3d 1210, 1214 (5th Cir. 1993). "[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

Under Mississippi law, "collateral estoppel is applicable, and the parties to an action will be precluded from relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Estate of Stutts v. Stutts*, 529 So. 2d 177, 179 (Miss. 1988); *see also Estate of Burgess ex rel. Burgess v. Trotter*, 6 So. 3d 1109, 1120 (Miss. Ct. App. 2008).[3] The parties have not cited, nor has the Court's own research revealed, any cases dealing specifically with the application of collateral estoppel in the context of student disciplinary proceedings. However, courts have addressed the issue in the analogous circumstance of a dismissed teacher who both seeks judicial review of a school board decision in state court *and* files a § 1983 suit alleging due process violations in federal court.

For example, in *Holmes v. Jones*, the Fifth Circuit affirmed the district court's dismissal of an elementary school principal's § 1983 suit against the school board based on collateral estoppel. 738 F.2d 711 (5th Cir. 1984). In *Holmes*, the school board decided not to rehire the principal, and the principal pursued judicial review in chancery court and the Mississippi

---

[3] The related legal doctrine of res judicata requires: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made. *Riley v. Moreland*, 537 So. 2d 1348, 1354 (Miss. 1989).

8

Supreme Court, both of which affirmed the school board. The district court found, and the Fifth Circuit agreed, that the issues presented to the chancery court, including allegations of due process violations and denial of constitutional rights, were "substantially identical" to the issues raised in federal court. *Id.* at 714. Accordingly, the principal was "collaterally estopped to litigate the issues presented in [his] federal action." *Id.*; *see also Lewis v. E. Feliciana Parish Sch. Bd.*, 820 F.2d 143 (5th Cir. 1987) (affirming summary judgment based on collateral estoppel of dismissed teacher's § 1983 action alleging violation of due process rights).

This Court has dismissed § 1983 suits by teachers based on collateral estoppel. *See Campbell v. Bd. of Trs.*, Civil Action No. 4:05cv115LN, 2006 WL 2376200, at *5 (S.D. Miss. Aug. 15, 2006) (Lee, J.) (granting summary judgment in § 1983 suit by former teacher on collateral estoppel grounds); *Gates v. Walker*, 865 F. Supp. 1222, 1241 (S.D. Miss. 1994) (Wingate, J.) (granting summary judgment for school board based on collateral estoppel and res judicata)[4]; *see also Moses v. Flanagan*, 727 F. Supp. 309, 312 (N.D. Miss. 1989) (Senter, J.) (granting summary judgment based on res judicata in § 1983 suit by former teacher who claimed his due process rights were violated). As explained by Judge Wingate:

> Collateral estoppel requires that the issues at stake in the present case be identical to the issue previously litigated. In the case *sub judice*, the issue at stake concerns the alleged violation of plaintiff's first amendment rights. All of the factual circumstances surrounding these alleged constitutional violations were raised at the Chancery Court and on appeal to the Mississippi Supreme Court. The issues were actually litigated before those courts, and the essential determinations of these issues were necessary and critical parts of the judgment. Although the initial proceedings were conducted by an administrative body, this circumstance does not alter the valid state court judgment concerning the factual and legal issues raised. . . . The plaintiff in this case had her case reviewed by the Chancery

---

[4] *Gates* was affirmed by the Fifth Circuit Court of Appeals. *Gates v. Walker*, 62 F.3d 394 (5th Cir. 1995). The Fifth Circuit found that the suit was barred by res judicata and did not address the issue of collateral estoppel. *Id.* at *4 n.3.

> Court on appeal from the decision of the school board and later by the Mississippi State Supreme Court. At these points, the plaintiff entered the judicial realm where issue preclusion principles are readily acknowledged. Plaintiff's core claim has been thoroughly litigated and decided against her. This court is not persuaded by any of plaintiff's arguments that another court should hear claims already previously litigated to finality in two state courts.

*Gates*, 865 F. Supp. at 1240-41 (internal citations omitted).

Here, the alleged deprivation of R.B.'s procedural and substantive due process rights during the HCSD's expulsion proceedings was litigated in the former action, determined by the former action, and essential to the judgment in the former action (Plaintiffs do not contend otherwise). More specifically, Plaintiffs claim in this suit that R.B. was denied the right to confront witnesses against him before the Appeals Committee and that he received no notice of the June 10, 2004 School Board meeting during which the decision was affirmed. Pls.' Resp. at 12-13. This is precisely what the Mississippi Court of Appeals and the Mississippi Supreme Court considered. *Hinds County Sch. Dist. Bd. of Trs. v. R.B.*, 10 So. 3d 387, 392-93, 397 (Miss. 2008). In fact, the language used by the Mississippi Supreme Court to describe the controversy regarding the expulsion proceedings could be used word-for-word in this Court's Order.

> At issue here is the due process that should be afforded to public school students involved in disciplinary matters. The School Board contends that R.B. received all process due under the law; and, alternatively, even if he were deprived of due process, R.B. suffered no substantial prejudice as a result. . . . R.B. argues that the lack of notice and opportunity to participate in the June 10, 2004, School Board hearing, as well as his not being provided with a list of witnesses for the purpose of cross-examination, deprived him of due process and resulted in substantial prejudice to his defense.

*Id.* at 397-98.

Plaintiffs apparently concede that the three elements of collateral estoppel are satisfied and instead argue that this case meets two exceptions to the rule–that the state court decision was

"transparently erroneous" and that the state court is "unwilling or unable to protect federal rights." Pls.' Resp. at 18. These arguments are not well-taken.

First, the "transparently erroneous" exception that Plaintiffs suggest has not been recognized by the Fifth Circuit Court of Appeals.[5] Second, Plaintiffs have not pointed to any aspect of the state court proceedings which would support the conclusion that the state courts are "unwilling or unable to protect federal rights." In *Haring v Prosise*, the United States Supreme Court observed that an exception "to collateral estoppel *may* be warranted in § 1983 actions in light of the 'understanding of § 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.'" 462 U.S. 306, 313-14 (1983) (emphasis added) (quoting *Allen*, 449 U.S. at 101). However, the Court in *Allen v. McCurry* explained that such concerns were appropriately addressed by the criteria necessary for the application of collateral estoppel.

> This understanding of § 1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue

---

[5] The phrase "transparently erroneous" appeared in dicta in *Red Fox v. Red Fox*, 564 F.2d 361, 365 (9th Cir. 1977). There, the Ninth Circuit Court of Appeals observed that due to the "unique historical relationship between the American Indian and the federal government" a federal court could choose not to apply collateral estoppel principles "if a state court determination of a claim under the Indian Civil Rights Act is transparently erroneous." This hypothetical exception was not applied in *Red Fox* and was not applied by the Ninth Circuit in *Ross v. Alaska*, 189 F.3d 1107 (9th Cir. 1999). *Ross*, a case cited by Plaintiffs, observed that the exception was dicta "explicitly based upon the Indian Civil Rights Act and the "unique historical relationship between the American Indian and the federal government." *Id.* at 1113.

decided by the first court. *But the Court's view of § 1983 in* Monroe *lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous.*

449 U.S. at 101 (emphasis added) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). Plaintiffs have set forth no facts suggesting that they were denied a full and fair opportunity to litigate the due process issues in state court. While they disagree with the Mississippi Supreme Court's holding, that does not provide the basis for federal review. *Id*. Accordingly, the Court concludes that summary judgment based on collateral estoppel is appropriate.

      C.    Uncontested Claims

In its motion for summary judgment, Defendant also lays out why any claims alleged pursuant to § 1985 and § 1986 as well as Plaintiffs' claim for punitive damages should be dismissed. Plaintiffs failed to respond to those portions of Defendant's motion. Having considered the grounds urged by Defendant, the Court finds that Plaintiffs' § 1985 and § 1986 claims and their claims for punitive damages should be dismissed.

IV.    Conclusion

Based on the foregoing, the Court finds that Defendant's motion for summary judgment should be granted. The Court has considered and rejected the remaining arguments Plaintiffs raised in their memorandum.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 56.

      **SO ORDERED AND ADJUDGED** this the 4th day of December, 2009.

                                          s/ *Daniel P. Jordan III*
                                          UNITED STATES DISTRICT JUDGE